# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**GEORGE S. TOELLER,**

        Plaintiff,

   v.                               **Case No. 03-C-826**

**STATE OF WISCONSIN
DEPARTMENT OF CORRECTIONS,**

        Defendant.

---

**DECISION AND ORDER ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

On August 29, 2003, the plaintiff filed a complaint against the State of Wisconsin Department of Corrections ("DOC"). The complaint charges that the defendant interfered with his rights and terminated his employment as retaliation for the plaintiff's attempt to assert his rights under the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2615(a). The plaintiff sought medical leave due to his own serious health concerns. The defendant initially filed a motion to dismiss, arguing that the application of the Eleventh Amendment makes the DOC immune from a FMLA suit. On December 23, 2003, this court entered an order denying the defendant's motion to dismiss and also denying the defendant's motion to stay the proceedings. Thereafter, the court entered a scheduling order and following the completion of discovery, the defendant filed the pending motion for summary judgment.

In its present motion, the defendant first submits that summary judgment should be granted on the plaintiff's FMLA claim that his discharge from employment interfered with his statutory rights, because the plaintiff had no statutory entitlement to avoid being discharged for his misconduct in

employment. The defendant contends that the plaintiff would have been discharged from employment regardless of his taking leave. The defendant also submits that summary judgment should be granted because, looking at the facts, the plaintiff is unable to establish a retaliation claim under either the direct or indirect methods of proof. Finally, the defendant asks the court to revisit its decision regarding the application of the Eleventh Amendment to plaintiff's FMLA action.

The plaintiff opposes the defendant's motion. It is the position of the plaintiff that the facts demonstrate that he requested FMLA leave pursuant to DOC policy, but that the Department failed to process his requests. The plaintiff goes on to allege that the DOC claimed that his absences during his medical leave were unexcused and used this as a pretext for terminating him, when, in fact, the DOC terminated him in retaliation for taking his FMLA leave.

**Standard for Summary Judgment**

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgement as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[M]aterial facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that summary judgment is proper. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to

2

support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**Analysis**

Before applying summary judgment standards to the facts of this case, a word about the facts. In the opinion of the court, the submissions of the parties constitute a surfeit of proposed findings of facts. The defendant's proposed findings of fact number 152, together with supporting affidavits from three persons, each containing numerous factual statements, e.g. the affidavit of Daniel Buchler contains 108 separate statements. Not to be outdone, the plaintiff has met fire with fire. The plaintiff has submitted 257 proposed findings of fact, supported by a voluminous appendix of documents, including a fold out timeline of events. Then, to compound matters, after the briefing on the summary judgment was complete, plaintiff's attorney filed an amended appendix, due to a misordering in the placement of document tabs in the original submission. The defendant then objected to this amended submission on the ground that it had replied to the plaintiff's submission as originally numbered.

While the court acknowledges the painstaking time and effort that counsel devoted to their respective submissions, it is apparent that the parties are attempting to litigate the facts of this case on

3

summary judgment. This is better left for trial where each party can try and persuade the jury that the particular factual spin they attempt to create is actually what happened. In other words, the parties are often working with the same factual events, but view them from a contradictory context. For example, both parties agree that the plaintiff missed work. The plaintiff contends that his absences were the result of a valid medical condition, but that the defendant rebuffed or interfered with his attempt to take FMLA leave, so he was forced to use accrued sick leave. The plaintiff argues that the defendant then disciplined plaintiff for taking this leave by determining that plaintiff's absences were unexcused; this was then used as a ground for termination from employment, which the plaintiff claims constitutes retaliation in violation of the FMLA. The defendant's position, which is reiterated throughout its motion, is that, even if Mr. Toeller did not take medical leave, he would have been discharged for valid reasons, so there cannot be any interference or retaliation. The thrust of the defendant's position is that, whether or not the plaintiff should have received FMLA leave, he still would have been terminated.

Due to the manner in which the parties have argued the facts, comparing and contrasting their factual presentations will not advance a resolution of the issues raised. Thus, the court will refer to germane facts when appropriate for a discussion of the various issues.

**1. FMLA - Interference Claim**

As previously indicated, Toeller raises two FMLA claims in his complaint. He first claims that the DOC interfered with his right to take FMLA leave, and he next claims that he was disciplined (retaliation) for taking FMLA leave. As stated in the case of Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799 (7th Cir. 2001),

> When an employee alleges that the employer interfered with her substantive rights under the FMLA, we require her to 'establish [ ], by a perponderance of the evidence, that [s]he is entitled to the benefit [s]he claims.' . . . The employer may than present evidence to show that the employee would not have been entitled to her position even if she had not taken leave. . . . The employee must then overcome the employer's assertion, as she carries the burden of demonstrating her right to the entitlement." [citations omitted].

Id. at 804.  See also Rice v. Sunrise Express, 209 F.3d 1008, 1017 (7th Cir. 2000).

This means that Toeller is first required to establish that he possessed a right under the Act. The plaintiff has presented facts to establish that the DOC policy does permit an employee to take leave under the FMLA. This is not disputed by the defendant. In this regard, the plaintiff alleges that on August 30, 2000 he became unable to work due to stress anxiety, leading to a delusional disorder. He was unable to work from that date through October 23, 2000. Toeller alleges that he called in sick during that period of time and on October 17, 2000, he presented a medical excuse from Dr. Litzow, his physician, which confirmed that he was unable to work for stress anxiety. This was then verified by Dr. Luck, a psychiatrist. Plaintiff says that he was either entitled to FMLA leave during this period, or his accrued sick leave.

The defendant submits that Toeller would have been terminated regardless of whether or not he took leave during the August-October, 2000 period. The defendant states that DOC has a progressive discipline track and that plaintiff was well along this track when he became absent from work in August, 2000. The defendant sets forth the disciplinary record of the plaintiff for violation of DOC work rules starting in August, 1999 and containing a number of violations, all before August, 2000. The last noted violation was on October 6, 2000. Therefore, the defendant's final decision-makers state that Toeller would have been discharged regardless of whether he took any leave.

5

As set forth in Rice and Kohls, in order to sustain his interference claim under the FMLA, Toeller will have to prove that he would not have been discharged if he had not taken FMLA leave. At the summary judgment stage, all reasonable inferences from the facts presented must be drawn in favor of the party opposing summary judgment.

Based on the defendant's submissions, it is apparent that Toeller had less than a perfect work record prior to August 23, 2000. In fact, an affidavit from one of the decision-makers, Cindy O'Donnell refers to a "bullet" remark made by Toeller on July 13, 2000 as the primary reason to terminate Toeller. (Toeller was quoted as saying, "You know, you would be surprised what one (1) bullet could do to an organization when well placed." Defendant's Proposed Findings of Fact, ¶ 101.) But, Toeller was not discharged prior to August 23, and the fact is that his discharge did not occur until after he returned from his medical leave, following another work violation on October 6, 2000. Furthermore, the defendant contends that Toeller did not properly substantiate the medical reason for his absences during the period in question; certain supervisors felt that Toeller was abusing his sick leave; and it was not until late October that he furnished appropriate medical reports. In the court's opinion, these events raise a credibility issue of what impact the occurrences of August-October, 2000, had on the defendant's final decision.

Contrary to the defendant's position, the facts surrounding Toeller's discharge are not undisputed. Giving all reasonable inferences to the plaintiff, the court is unable to conclude as a matter of law that Toeller would have been discharged regardless of what occurred during the August-October period. The court is not persuaded that the defendant is entitled to summary judgment on the plaintiff's interference claim.

6

### 2. FMLA - Retaliation Claim

A claim for retaliation under the FMLA is evaluated in the same way that a claim for retaliation is evaluated under other employment statutes, such as the American with Disabilities Act or Title VII. Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004). This means that the plaintiff is able to proceed by either the direct or indirect methods of proof. As described by the court in Buie, a plaintiff can proceed under the direct method by establishing retaliation by direct evidence or circumstantial evidence. To proceed under the indirect method, the plaintiff must establish a prima facie case by showing that after engaging in the protected conduct, only he, and not any similarly situated employee who did not engage in the protected conduct, was subjected to an adverse employment action, even though plaintiff was performing his job in a satisfactory manner. Id. at 503.

Toeller claims that there is direct evidence that he was subjected to retaliation. Since Toeller does not attempt to proceed under the indirect method of proof, the court will focus its attention on whether or not Toeller's claim of retaliation can survive the defendant's motion for summary judgment based on the direct evidence approach. Contrary to the argument presented by the defendant in its motion, under the direct approach, it is important to emphasize that a plaintiff may present either direct evidence or circumstantial evidence. The defendant seems to argue that if the plaintiff is unable to present direct evidence, he is foreclosed from proceeding under the direct approach. (Def.'s Br. at 16.) However, as stated in Buie, the direct method encompasses both direct and circumstantial evidence.

"'Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" Rudin v. Lincoln Land Cmty. College, 420 F.3d 712, 720 (7th Cir. 2005)(quoting Eiland v. Trinity Hosp., 150 F.3d 747, 751 (7th

7

Cir.1998)). "Circumstantial evidence of discrimination, on the other hand, allows the trier of fact 'to *infer* intentional discrimination by the decisionmaker.'" Id. (citing Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003)). This means that a plaintiff proceeding under the direct method may utilize circumstantial evidence with, or in place of, direct evidence. Rudin, 420 F.3d at 720, n. 3.

The evidence to establish retaliation that the plaintiff points to is that as of October 23, 2000, Toeller was suspended because of unexcused absences. Prior to this time, Daniel Buchler, Warden at Racine Youthful Offender Correctional Facility (RYOCF), sent a letter dated September 26, 2000 to Toeller informing him that he (Toeller) had failed to provide a doctor's verification for his absences. Furthermore, failure to do so would be considered a violation of work rules and subject him to discipline, including discharge. Buchler sent another letter on October 11 reconfirming the potential violations of insubordination and unexcused absences. Then, on October 6, 2000, Toeller was alleged to have violated a work rule regarding unexcused absences and insubordination. Buchler avers that he finally terminated Toeller for his history of escalating work rule violations. The letter that he sent to Toeller on October 26 advising him of the termination included the "bullet" comment of July, 2000, together with the September and October, 2000 violations. Also mentioned were past violations in 1999 and 2000.

The plaintiff states that on August 1, 2000, Edward Hermansen, RYOCF Human Relations Director ordered that Toeller have an independent medical examination, because of the conduct he exhibited at work. The results of that exam were that Toeller exhibited a passive-aggressive personality and that RYOCF was not the best placement for him. Shortly thereafter, on August 30, 2000, Toeller took sick leave. Toeller was then treated by Dr. Litzow for anxiety and depression. Dr. Litzow referred him to Dr. Luck. Toeller alleges that he verbally advised Hermansen of what was

happening, and that he was informed that he would need a medical return to work slip before he would be able to resume work. In his affidavit, Hermansen states that he was unsuccessful in his attempts to contact Toeller to advise him that he needed to verify his absences with a medical excuse. Plaintiff further alleges that in early October, Hermansen learned from Dr. Luck that Toeller was diagnosed with a delusional disorder, was exhibiting bizarre behavior, was placed on medication and would be off work for two weeks. On October 17, 2000, Toeller provided Hermansen with an excuse from Dr. Litzow which stated that he was unable to work from August 30 to the present, and that Dr. Luck would determine when he could return to work. On October 18, Dr. Luck completed his medical form which stated that Toeller would be gone from work until October 23.

When Toeller returned from leave on October 23, Warden Buchler suspended him with pay for violating work rules. As indicated above, the disciplinary process moved forward and three days later Buchler issued his termination letter. In his affidavit, Buchler states, "The fact that Toeller took leave regarding his health conditions was not a factor or even a consideration in the decision to discharge Toeller from employment at WDOC."

The defendant argues that Buchler's statement, as supported by the history of work violations, constitutes unrebutted evidence that plaintiff was not terminated in retaliation for taking sick leave. Defendant states that the court must conclude that plaintiff would have been terminated even if he did not take sick leave. This court disagrees and is unable to draw the defendant's "inescapable conclusion." As indicated earlier, at the summary judgment stage, all reasonable inferences must be drawn in favor of the plaintiff. While it is apparent that the plaintiff had a history of violations prior to taking sick leave, what was the defendant's motivation after August 30, 2000? Was it simply

9

delaying Toeller's disciplinary proceedings until he was able to return to work, or was it retaliating for a belief that Toeller was abusing DOC leave policy?

In this regard, plaintiff points out that Hermansen at his deposition indicated that he believed Toeller was abusing sick leave. Also, the "bullet" incident occurred in July, he was then suspended with pay and required to undergo an independent medical exam. The report from this independent psychological exam came back on August 18 and Toeller was allowed to return to work. It might be reasonable to infer that if the "bullet" incident was so serious, when combined with the prior violations and the report which stated that Toeller was not suited for placement at the facility, immediate termination proceedings should have been commenced. Instead, the defendant waited until Toeller returned to work and added additional violations, which may be of questionable nature in that plaintiff's doctors subsequently supported his absence for medical reasons.

On the other hand, it is equally reasonable to infer, as the defendant argues, that after Buchler considered these incidents, he did proceed with disciplinary proceedings that had to be put on hold when Toeller took his sick leave. The process then resumed upon his return. The defendant also raises suspicions regarding the timing of Toeller's leave. As to the work violations during the leave period, the defendant claims that Hermansen was unsuccessful in getting Toeller to substantiate his absence, at least until near the end of the leave period. The defendant further contends that since the rules require an employee to substantiate his sick leave, it was incumbent upon Toeller to do this contemporaneously and not after the fact. Failure to do so, constituted a work violation.

These are factual issues, subject to credibility determinations, that cannot be resolved on motion for summary judgment. This is what the court meant when it earlier stated that the parties are attempting to litigate this case during the summary judgment stage of the proceedings. The court is

10

unable to conclude as a matter of law that Toeller will be unable to establish his retaliation claim by use of the direct method, either utilizing direct and/or circumstantial evidence. The court will deny the defendant's motion for summary judgment on the retaliation claim, and the plaintiff will have the opportunity to establish this claim at trial by the direct method of proof.

### 3. Reconsideration of Eleventh Amendment Immunity Issue

On December 23, 2003, this court issued its decision denying the defendant's motion to dismiss. The issue raised by the defendant was that the defendant DOC was immune from suit under the FMLA by virtue of the application of the Eleventh Amendment. The Eleventh Amendment to the Constitution insulates states from lawsuits, and that sovereign immunity can be breached only if Congress makes its intention clear in particular legislation that it is abrogating such immunity. Subsequent to the passage of the FMLA, the question was raised in a number of lawsuits as to whether Congress had clearly specified its intent to abrogate the states' sovereign immunity and make them subject to FMLA claims.

As noted in this court's decision on the motion to dismiss, prior to May, 2003, eight Courts of Appeals had held that, although Congress intended in the FMLA to abrogate the states' Eleventh Amendment immunity from suits for money damages, it failed to validly do so. Then, on May 27, 2003, the United States Supreme Court issued its decision in Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721 (2003), in which it held that Congress validly abrogated the states' immunity with regard to the third provision of the FMLA, the care for a spouse or family member.

This case involves the self-care provision of the FMLA, which was not decided in Hibbs. It did not take long for a court to address this specific issue and on September 4, 2003, the Tenth Circuit held that, notwithstanding the conclusion in Hibbs regarding the family care provisions, Congress did

11

not validly abrogate the states immunity as to the self-care provisions. Brockman v. Wyoming Dep't of Family Serv., 342 F.3d 1159, 1164-65 (10th Cir. 2003). The Fourth Circuit took a contrary view and stated that Congress had effectively abrogated the states' Eleventh Amendment immunity for claims arising under the FMLA. Montgomery v. Maryland, 72 Fed. Appx. 17, 2003 WL 21752919 (4th Cir. Md. 2003)(a claim under the self-care provision had been raised). Recently, the Sixth Circuit had an opportunity to address the self-care provisions of the FMLA and held that Congress had failed to validly abrogate the states's Eleventh Amendment immunity. Touvell v. Ohio Dep't of Mental Retardation and Dev. Disabilities, ___ F.3d ___, 2005 WL 2173626 (6th Cir. 2005). Parenthetically, the Sixth Circuit was one of the circuits that had found that Congress failed to validly exercise its power in regard to the entire FMLA prior to Hibbs. See Sims v. Univ. of Cincinnati, 219 F.3d 559 (6th Cir. 2000).

In its motion for summary judgment, the defendant urges that this court reconsider its decision on the motion to dismiss in view of the developing case law, which, the defendant submits, is strongly in favor of its position. In addition to Touvell, the defendant cites to several district court decisions. The plaintiff opposes any reconsideration and argues that the court's prior decision has now become the "law of the case," meaning that the court is precluded from revisiting its decision. The plaintiff submits that to revisit the issue and rescind the earlier decision would do great harm to Toeller since such a result would dismiss his claims.

Whether or not the "law of the case" doctrine technically applies to this situation, if this court now believes that its prior decision was legally erroneous, then it is bound to revisit and rescind that decision, regardless of the consequences. After reviewing and considering the subsequent decisions, this court is not persuaded that its decision denying the defendant's motion to dismiss was in error.

12

It does appear that there is a mounting tide of case law that has reached a result contrary to this court's, but it is not "new" law. For example, even though Touvell mentions and disagrees with this court's decision (in a footnote, but a lengthy one), the Sixth Circuit had been one of the pre-Hibbs' courts that found Congress had failed to validly abrogate states's immunity under the entire FMLA; therefore, the decision in Touvell comes as no surprise to this court. District court decisions cited by the defendant, such as Wennihan v. AHCCCS, No. 04-1642, slip op., 2005 WL 1876297 (D. Ariz. July 5, 2005), cite Brockman for support, and that case was thoroughly discussed and considered by this court in its prior decision.

As stated in this court's prior decision, both parties agree that Congress clearly intended to abrogate the states' immunity in actions under the family leave provisions of the FMLA; they disagree as to the self-care provisions. Without reiterating the reasons previously given, this court believes that Congress similarly expressed its intent with regard to the self-care/medical leave provision vis-a-vis its stated concerns about single parents. In declining to revisit or reconsider the prior decision, the most important factor is that the Seventh Circuit has yet to address this specific issue. Until such time as the United States Supreme Court or the Seventh Circuit holds otherwise, this court stands by its decision of December 23, 2003. Accordingly, this basis for the defendant's motion for summary judgment will be denied.

IT IS THEREFORE ORDERED, that

1. The defendant's motion for summary judgment is hereby **denied**.

2.  The court will conduct a telephone scheduling conference with counsel to set a date for trial.  The conference will be held on **Tuesday, October 11, 2005**, at **9:00 a.m.**  The court will place the telephone call.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2005.

           s/AARON E. GOODSTEIN
           U.S. Magistrate Judge